UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAPAN PRESS SERVICE, INC., a California
corporation,

                   Plaintiff,

      - against-

JAPAN PRESS SERVICE, INC., a Hawaii
corporation,

                 Defendant.
------------------------------------------------------------X

**OPINION AND ORDER
11 CV 5875 (SJF)(ETB)**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  JAN 02 2013  ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On December 2, 2011, plaintiff Japan Press Service, Inc., a California corporation ("plaintiff"), commenced this action against defendant Japan Press Service, Inc., a Hawaii corporation ("defendant"), pursuant to the Lanham Act, as amended by the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. §§ 1114-1117 and 1125(a) and (c), alleging trademark infringement, false designation of origin and dilution of the trademark(s) "Nikkan Sun" and "Daily Japanese Sun." Defendant now moves pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406 to dismiss the complaint or, in the alternative, pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the District of Hawaii. For the reasons stated herein, the branches of defendant's motion seeking dismissal of the complaint are granted.

1

I.       Background

        A.       Factual Allegations

        Plaintiff is a California corporation with its principal place of business in Torrance,

California.  (Complaint ("Compl."), ¶ 3).

        Defendant is a Hawaii corporation that publishes a daily Japanese newspaper and has its

principal place of business in Honolulu, Hawaii.  (Declaration of Ichizo Kobayashi ("Kobayashi

Decl."), ¶¶ 2, 4).  According to Ichizo Kobayashi, the president and CEO of defendant,

(Kobayashi Decl., ¶ 1), on January 27, 2003, he and Tai Makino ("Makino"), the majority

shareholder of both plaintiff and plaintiff's Japanese affiliate, Kabushiki Gaisha JPN, Inc.

("Kabushiki Gaisha"), incorporated defendant in the State of Hawaii.  (Kobayashi Decl., ¶ 4).

On February 8, 2003, defendant issued one hundred (100) shares of Class A common stock to

Kobayashi and one hundred (100) shares of Class A common stock to Makino.  (Kobayashi

Decl., ¶ 5).  Kobayashi maintains that since 2003, defendant has published, printed and

distributed a publication known as "'Nikkan San' (a/k/a Japanese Daily Sun)" in the State of

Hawaii, but has never published, printed or distributed any type of publication in New York or

anywhere else outside of the State of Hawaii.  (Kobayashi Decl., ¶¶ 13, 14).  According to

Kobayashi, there is a Japanese language publication known as the "Bi-Daily Sun" currently

distributed in the State of New York, which is published and distributed by Daily World Press,

Inc. ("World Press"), a company that has no affiliation with defendant.  (Kobayashi Decl., ¶ 15).

According to a "Trademark Consent Agreement" between World Press and plaintiff effective

January 21, 2008 ("Consent Agreement"), World Press is a publisher of a Japanese-language

daily newspaper entitled "Daily Sun New York" which is distributed within the Northeast United

2

States, including New York, New Jersey, Connecticut and Pennsylvania. (Declaration of Fredric H. Aaron ("Aaron Decl."), Ex. E).

On or about March 25, 2003, Kabushiki Gaisha and defendant entered into a series of agreements ("the March 25, 2003 Contracts"), effective for a two (2)-year term commencing on April 1, 2003, pursuant to which, *inter alia*: (1) Kabushiki Gaisha was to provide news articles "in the same formats and sizes of the (NIKKAN SAN) which is being published in Los Angeles * * * on the days the (NIKKAN SAN) is published in Los Angeles" in exchange for which defendant would make monthly payments to Kabushiki Gaisha in the amount of seven thousand dollars ($7,000.00); (2) Kabushiki Gaisha granted defendant the use of "the names and logos of NIKKAN SAN, The Japanese Daily Sun and nikkan san (in Japanese) for the newspaper which [defendant] publish [sic] in Hawaii;" (3) Kabushiki Gaisha agreed not to "grant the usage of the names and logos of NIKKAN SAN, The Japanese Daily Sun and nikkan san (in Japanese) to anyone other than [defendant] in Hawaii;" and (4) the parties thereto designated the Tokyo District Court as the "court having jurisdiction over any litigation arising out of th[e] Contract." (Compl., Ex. B).

On or about March 8, 2007, Makino and Kobayashi incorporated NIKKAN SUN.COM INC. ("the New York joint venture") in the State of New York as a joint venture for the purpose of distributing a Japanese language newspaper in New York. (Kobayashi Decl., ¶ 6). Kobayashi maintains that defendant was never a shareholder or affiliate of the New York joint venture. (Kobayashi Decl., ¶ 9). According to Kobayashi, although he invested five hundred thousand dollars ($500,000.00) in the New York joint venture, Makino failed to invest the two hundred thousand dollars ($200,000.00) that he had promised to invest in the New York joint venture.

3

(Kobayashi Decl., ¶¶ 7-8).

On April 10, 2007, Kobayashi purchased all of Makino's shares of common stock in defendant. (Kobayashi Decl., ¶ 10).

Pursuant to the January 21, 2008 Consent Agreement between World Press, its president Jin Yoshida ("Yoshida"), plaintiff and Makino, *inter alia*: (a) World Press (i) consented to plaintiff's use of the mark "Nikkan San," (ii) agreed not to take any action to interfere with plaintiff's use of the mark "Nikkan San," (iii) agreed to abandon two (2) trademark applications it filed on March 29, 2007 with the United States Patent and Trademark Office ("USPTO") for the marks "Sun New York" and "Daily Sun New York" and to refrain from filing a new application in the United States for any of the following marks: "New York Daily Sun," "Sun New York," "Daily Sun," "Nikkan Sun," "The Japanese Daily Sun," or "Nikkan San," and (iv) agreed to refrain from selling, marketing, distributing and/or franchising a daily newspaper with a title including the phrases "Daily Sun," "Nikkan Sun," or "Nikkan San" within the States of California or Hawaii; (b) plaintiff (i) consented to World Press's use of the mark "Daily Sun" within the Northeast United States and (ii) agreed not to take any action to interfere with World Press's use of the mark "Daily Sun" within the Northeast United States; and (c) the parties thereto agreed (i) that plaintiff shall have the right to sell, market, distribute and/or franchise a daily, weekly or monthly newspaper with a title containing the phrases "Nikkan Sun" or "Nikkan San" within the Northeast United States and (ii) that the Consent Agreement shall be binding upon their successors and assigns. (Aaron Decl., Ex. E).

On March 24, 2008, defendant registered the trade names "NIKKAN SUN" and "JAPANESE DAILY SUN" with the State of Hawaii, Department of Commerce and Consumer

4

affairs. (Compl., Ex. C; Kobayashi Decl., ¶ 11). According to plaintiff, defendant filed for the trademarks, which it contends are "deceptively similar to Plaintiff's trademark," without the notice or approval of either plaintiff of Kabushiki Gaisha. (Compl., ¶ 9).

According to Kobayashi, in or about April 2008, he and Makino decided to wind down the New York joint venture because it was not profitable. (Kobayashi Decl., ¶ 12). However, records from the New York State Department of State, Division of Corporations ("NYSDOS") indicate that the New York joint venture was dissolved on January 7, 2010. (Aaron Decl., Ex. F).

By letter dated August 26, 2009, defendant's counsel notified Makino, *inter alia*, that defendant no longer intended to purchase news content from him and owned the rights to the trade names "Nikkan San" and "Japanese Daily Sun," as well as any corresponding trademarks, "based on its first appropriation and continued use of said trade names and trade marks in the State of Hawaii." (Compl., ¶ 10). According to plaintiff, by terminating those contracts, defendant forfeited its right to continue using the names owned by plaintiff, including the mark "Nikkan San." (Compl., ¶ 10).

On or about October 1, 2009, plaintiff filed an application with the USPTO requesting registration of the mark "Nikkan San," which translates in English as "Japanese Daily Sun." (Aaron Decl., Ex. C). The mark "Nikkan San," consisting of "standard characters without claim to any particular font, style, size, or color," was registered with the USPTO on November 2, 2010 under registration number 3,869,321. (Aaron Decl., Ex. D). The certificate of registration indicates, in relevant part, that "no claim is made to the exclusive right to use 'Nikkan', apart from the mark as shown." (Id.)

According to Kobayashi, defendant has never engaged in, or transacted, any business in

the State of New York, and never had an office or bank account in New York. (Kobayashi Decl., ¶¶ 9, 14). Kobayashi avers that most of the parties' dealings occurred in Honolulu, Hawaii; that none of the key events alleged in the complaint occurred in New York; that most of the witnesses and key evidence are located in Hawaii; that he expects to be a witness at any trial in this action and he resides in Honolulu, Hawaii; that he expects Makino, who resides "closer to Hawaii than New York," i.e., in Los Angeles and Japan, to also be a key witness at trial; and that he anticipates that six (6) of defendant's current employees, all of whom reside in Honolulu, Hawaii, to also testify at any trial in this action. (Kobayashi Decl., ¶¶ 3, 16-19).

### B. Procedural History

On December 2, 2011, plaintiff filed a complaint against defendant alleging claims for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §§ 1114-1117 (first claim for relief); false designation of origin and false description in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (second claim for relief); and dilution of a trademark in violation of Section 43(c) of the Lanham Act, as amended by the FTDA, 15 U.S.C. § 1125(c) (third claim for relief). Specifically, plaintiff alleges that defendant's continued use of the name "Nikkan San" infringes upon plaintiff's registered trademark; that defendant's conduct "constitutes the use of symbols or devices tending falsely to describe the infringing products * * * [and] is likely to cause confusion, mistake or deception by or in the public as to the affiliation, connection, association, origin, sponsorship or approval of the infringing products to the detriment of Plaintiff," (Compl., ¶ 20); and that defendant's conduct has diluted, or is likely to dilute, the distinctive quality of plaintiff's trademark "Nikkan San," which, according to plaintiff,

"is a very well known newspaper in the Japanese-American community," (Compl., ¶¶ 23-24).

Plaintiff seeks declaratory and injunctive relief; damages, including treble damages pursuant to

15 U.S.C. § 1117 and punitive damages; an accounting; the imposition of a constructive trust

upon all of defendant's funds and assets arising out of its infringing activities; costs and

attorney's fees.

Defendant now moves pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil

Procedure and 28 U.S.C. § 1406 to dismiss the complaint or, in the alternative, pursuant to 28

U.S.C. § 1404(a) to transfer this action to the United States District Court for the District of

Hawaii.


II.     DISCUSSION

        A.      Standard of Review

        The same standard of review is applied to both motions seeking dismissal for lack of

personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and those

seeking dismissal for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil

Procedure. See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005); Savoy Senior

Housing Corp. v. TRBC Ministries, LLC, 401 B. R. 589, 596 (S.D.N.Y. 2009).

        "[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the

defendant [or is a proper venue] * * *. Where a court [has chosen] not to conduct a full-blown

evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of

jurisdiction [or venue] through its own affidavits and supporting materials." Grand River Enter.

Six Nations, Ltd., v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005) (quoting Bank Brussels Lambert v.

Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)); see also MacDermid, Inc. v. Deiter, — F.3d —, 2012 WL 6684580 (2d Cir. Dec. 26, 2012). "This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant [or that venue is proper]." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL ("Licci I"), 673 F.3d 50, 59 (2d Cir. 2012), certified question answered by Licci v. Lebanese Canadian Bank ("Licci II"), — N.E.2d —, 2012 WL 5844997 (N.Y. Nov. 20, 2012) (quotations and citation omitted). "In considering whether the plaintiffs have met this burden, [courts] will not draw argumentative inferences in the plaintiff's favor * * *, nor * * * accept as true a legal conclusion couched as a factual allegation." Id. (quotations and citations omitted).

"Unlike a motion to dismiss pursuant to Rule 12(b)(6), deciding a Rule 12(b)(2) [or Rule 12(b)(3)] motion necessarily requires resolution of factual matters outside the pleadings." ADP Investor Communication Servs. Inc. v. In House Attorney Servs. Inc., 390 F. Supp. 2d 212, 217 (E.D.N.Y. 2005); see also In re Stillwater Capital Partners Inc. Litigation, 851 F. Supp. 2d 556, 566-67 (S.D.N.Y. 2012) ("[A] court may consider materials outside the pleadings [on a Rule 12(b)(2) motion], but must credit plaintiffs' averments of jurisdictional facts as true."); Sea Tow Services Intern., Inc. v. St. Paul Fire and Marine Ins. Co., 779 F. Supp. 2d 319, 322 (E.D.N.Y. 2011) (holding that a court may consider evidence outside of the pleadings in resolving a Rule 12(b)(2) motion). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." Whitaker, 261 F.3d at 208 (quoting A.I. Trade Finance, Inc. v. Petra Bank, 989 F. 2d 76, 79-80 (2d Cir. 1993)); see also Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d

123, 138 (2d Cir. 2010) (accord); Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007)

("In analyzing whether the plaintiff has made the requisite prima facie showing that venue is

proper, [courts] view all the facts in a light most favorable to plaintiff.")


B.     Personal Jurisdiction

"The question of personal jurisdiction, which goes to the court's power to exercise

control over the parties, is typically decided in advance of venue, which is primarily a matter of

choosing a convenient forum." Leroy v. Great Western United Corp., 443 U.S. 173, 180, 99

S.Ct. 2710, 61 L. Ed. 2d 464 (1979). Nonetheless, since "neither personal jurisdiction nor venue

is fundamentally preliminary in the sense that subject-matter jurisdiction is, * * * when there is a

sound prudential justification for doing so, * * * a court may reverse the normal order of

considering personal jurisdiction and venue." Id.

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of

three primary requirements." Licci I, 673 F.3d at 59. "First, the plaintiff's service of process

upon the defendant must have been procedurally proper." Id. "Second, there must be a statutory

basis for personal jurisdiction that renders such service of process effective." Id. "The available

statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k)." Id.

Where, as here, personal jurisdiction is based upon Rule 4(k)(1)(A), the court must apply the law

of the forum state. Id.; see also Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163

(2d Cir. 2010); Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004) ("In a

federal question case, where the defendant resides outside the forum state, federal courts apply

the forum state's personal jurisdiction rules if the applicable federal statute does not provide for

national service of process. * * * Because the Lanham Act does not provide for national service of process, the New York state long-arm statute governs this inquiry. See generally, 15 U.S.C. § 1051, et seq.; Fed. R. Civ. P. 4(k)(1)(A).") "Third, the exercise of personal jurisdiction must comport with constitutional due process principles. Licci I, 673 F.3d at 60; see also Chloe, 616 F.3d at 163.

1.    New York Law

a.    General Jurisdiction

"A court's general jurisdiction * * * is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." Licci, 673 F.3d at 59 n. 8; see also Chloe, 616 F.3d at 164. "General jurisdiction is authorized where the defendant's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" Licci, 673 F.3d at 59 n. 8 (quoting Goodyear Dunlop, — U.S. —, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)); see also Bank Brussels, 305 F.3d at 127.

"Under New York law, a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000). "Section 301 [of N.Y. C.P.L.R.] codifies the common law principle that a non-domiciliary is deemed to be 'present' in the state if the non-domiciliary is 'doing business' in the state when the action is commenced." Nasso v. Seagal, 263 F. Supp. 2d 596, 611 (E.D.N.Y. 2003); see Penny v. United Fruit Co., 869 F. Supp. 122, 125 (E.D.N.Y. 1994) ("Under CPLR 301, whether a corporation is present in New York is determined based on the time the

10

lawsuit was filed, not when the claim arose."); also Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C., 41 F. Supp. 2d 453, 457 (S.D.N.Y. 1999) (accord); Massaro v. Wellen Oil & Chemical, Inc., 304 A.D.2d 538, 539, 756 N.Y.S.2d 887 (2d Dept. 2003) (affirming summary judgment dismissing the complaint when the defendant corporation had ceased its operations well before commencement of the action and the plaintiff failed to raise an issue of fact to show that the defendant was "doing business" in New York at the time the action was commenced).

"A corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." Wiwa, 226 F.3d at 95 (quotations, alterations and citations omitted); see also Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1991) ("Section 301 * * * permits a court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction. * * * However, New York law requires that the defendant be present in New York not occasionally or casually, but with a fair measure of permanence and continuity." (quotations and citations omitted)). "In order to establish that this standard is met, a plaintiff must show that a defendant engaged in continuous, permanent, and substantial activity in New York." Wiwa, 226 F.3d at 95 (quotations and citation omitted); see also Landoil, 918 F.2d at 1043 (holding that a defendant's contacts with New York must be analyzed "not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York." (quotations and citation omitted)). Traditional indicia of a corporation's presence

in New York for purposes of establishing general jurisdiction include, *inter alia*: whether the company has an office in New York, whether it has any bank accounts or other property in New York, whether it has a telephone listing in New York, whether it does public relations work in New York, whether it has individuals permanently located in New York to promote its interests, Wiwa, 226 F.3d at 98, and whether it solicits business in New York, if such solicitation "is substantial and continuous, and defendant engages in other activities of substance in [New York] * * *." Landoil, 918 F.2d at 1043-44.

"A business relationship with a New York entity does not provide a sufficient basis for [general] jurisdiction at least in the absence of a showing that th[e] [New York] company has become an agent or division of the [defendant] company over which the plaintiff seeks to exercise personal jurisdiction." Landoil, 918 F.2d at 1044; see also Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984) ("[T]he presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation.")

None of the traditional indicia of a corporation's "doing business" in New York are present in this case. Defendant does not have an office, bank account, other property or telephone listing in New York; does not have any employee, agent or other individual permanently located in New York to promote its interests here; does not do public relations work in New York; and does not solicit business in New York. Defendant's relationship with the New York joint venture does not provide a basis for exercising general jurisdiction over defendant because there is no indication that the New York joint venture was ever an agent or division of defendant, i.e., there is no indication that defendant ever owned stock in the New York joint

12

venture; that the New York joint venture was financially dependent upon defendant; that defendant failed to observe corporate formalities; or that defendant ever exercised any control over the marketing and operational policies of the New York joint venture. See, e.g. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998); Beech Aircraft, 751 F.2d at 120-22. In any event, the evidence establishes that the New York joint venture was dissolved no later than January 7, 2010, almost one (1) year prior to the commencement of this action, and, therefore, the New York joint venture was not present in New York at the time that this action was filed. Accordingly, New York law does not provide for general jurisdiction over defendant in this action.

b.    Specific Jurisdiction

"Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" Chloe, 616 F.3d at 164 (quoting Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 & n. 8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). Specific jurisdiction "'depends on an "affiliation between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Licci, 673 F.3d at 59 n. 8 (quoting Goodyear Dunlop, — U.S. —, 131 S. Ct. at 2851). "Such jurisdiction is 'confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" Id. (quoting Goodyear Dunlop, — U.S. —, 131 S. Ct. at 2851).

New York's long-arm statute, N.Y. C.P.L.R. § 302(a), provides, in relevant part, as follows:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary * * * who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state, * * *; or 3. commits a tortious act without the state causing injury to person or property within the state, * * *, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or intentional commerce; or 4. owns, uses or possesses any real property situated within the state."

"[S]ection 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York. * * * Trademark infringement is just such a tort." Chloe, 616 F.3d at 171 (quotations, alterations and citations omitted); see also Sunward Electronics, 362 F.3d at 24 ("Plaintiff's Lanham Act claim sounds in tort. * * * Although Section 302(a)(1) is typically invoked in breach of contract cases, * * *, it applies as well to actions in tort when supported by a sufficient showing of facts.") "[I]n determining whether personal jurisdiction may be exercised under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." Licci, 673 F.3d at 60 (quotations, alterations and citations omitted); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006). "The jurisdictional inquiry under CPLR 302(a)(1) necessarily requires examination of the particular facts in each case." Licci II, — N.E.2d —, 2012 WL 5844997.

i.      Section 302(a)(1)

A.      Transacts Business Inquiry

"[A] defendant need not be physically present in New York to transact business there within the meaning of the first clause of section 302(a)(1) * * * as long as he engages in purposeful activities or volitional acts through which he avails himself of the privilege of conducting activities within the State, thus invoking the benefits and protections of its laws * * *." Chloe, 616 F.3d at 169 (quotations, alterations and citations omitted); see also Licci, 673 F.3d at 61 ("[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York, * * * thereby invoking the benefits and protections of its laws." (quotations and citations omitted)). "[S]ection 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted." Chloe, 616 F.3d at 170 (quotations and citation omitted); see also Deutsche Bank Securities, Inc. v. Montana Board of Investments, 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164, 840 N.E.2d 1140 (N.Y. 2006). "[I]t is the quality of the defendants' New York contacts that is the primary consideration." Licci I, 673 F.3d at 62; see also Licci II, — N.E.2d —, 2012 WL 5844997 ("[A]lthough determining what facts constitute 'purposeful availment' is an objective inquiry, it always requires a court to closely examine the defendant's contacts for their quality.") "The mere receipt by a nonresident of benefit or profit from a contract performed by others in New York" is insufficient to confer personal jurisdiction under Section 302(a)(1). Ferrante Equipment Co. v. Lasker-Goldman Corp., 26 N.Y.2d 280, 309

N.Y.S.2d 913, 258 N.E.2d 202 (N.Y. 1970).

Plaintiff has not pointed to a single transaction of business by defendant in New York. Defendant is a Hawaii corporation with its principal place of business in Hawaii and its business activities consist of printing, publishing and distributing a Japanese-language newspaper in the State of Hawaii only. There is no evidence that defendant ever engaged in, or transacted, any business in the State of New York, or had an office, bank account or other physical presence in the State of New York. The only acts alleged in the complaint with any connection to New York involve the conduct of Kobayashi, a corporate officer and shareholder of defendant, in incorporating a joint venture in the State of New York with Makino, the majority shareholder of plaintiff, who, at the time the joint venture was incorporated on March 8, 2007, was also a shareholder of defendant, for the purpose of distributing a Japanese-language newspaper in the State of New York. Defendant was never itself a shareholder or affiliate of the joint venture. Rather, the New York joint venture was a separate and independent operation conducted through a New York corporation unaffiliated with defendant.

## B.  Nexus Inquiry

Even assuming, *arguendo*, that defendant's common ownership with the New York joint venture is sufficient to establish that defendant transacted business in New York for purposes of New York's long-arm statute, there is no articulable nexus between the New York joint venture's activities in New York and plaintiff's Lanham Act claims. "[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Licci I, 673

16

F.3d at 66 (quotations and citations omitted); see also Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007); Licci II, — N.E.2d —, 2012 WL 5844997 ("[T]he second prong of the jurisdictional inquiry * * * require[s] that, in light of all the circumstances, there [is] an articulable nexus * * * or substantial relationship * * * between the business transaction and the claim asserted." (quotations and citations omitted)). "[C]ausation is not required, and * * * the [nexus] inquiry under [Section 302(a)(1)] is relatively permissive." Licci II, — N.E.2d —, 2012 WL 5844997. "CPLR 302(a)(1) does not require that every element of the cause of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." Id. However, "[j]urisdiction is not justified under N.Y. C.P.L.R. § 302(a)(1) where the relationship between the claim and transaction is too attenuated, * * * and a connection that is merely coincidental is insufficient to support jurisdiction." Licci I, at 66-7 (quotations, alterations and citations omitted); see also Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 103 (2d Cir. 2006); Johnson v. Ward, 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201 (N.Y. 2005).

The gravamen of plaintiff's claims is that defendant infringed upon plaintiff's trademarks by continuing to use the name "Nikkan Sun" with respect to the newspaper it prints, publishes and distributes in the State of Hawaii after the March 25, 2003 Contracts between defendant and Kabushiki Gaisha were terminated in 2009. Thus, there is no articulable nexus between plaintiff's claims relating to defendant's continued use of the trademarks in the State of Hawaii in and after August 2009, and the business conducted by the joint venture in New York, i.e., the distribution of a Japanese-language newspaper in the State of New York from approximately

17

March 2007 until April 2008. Accordingly, Section 302(a)(1) does not confer specific personal jurisdiction over defendant in this action.

ii.    Sections 302(a)(2) and (3)[1]

Section 302(a)(2) confers personal jurisdiction over a non-domiciliary defendant only "when they commit acts within the state," Bensusan Restaurant Corp. v. King, 126 F.3d 25, 28 (2d Cir. 1997) (quoting Feathers v. McLucas, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965)), and, thus, "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." Id.; see also Bank Brussels, 171 F.3d at 790 ("[A] defendant's physical presence in New York is a prerequisite to jurisdiction under Section 302(a)(2).") "Even if [a plaintiff] suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of Section 302(a)(2)." Bensusan Restaurant, 126 F.3d at 28. Since plaintiff has not alleged any tortious act committed by defendant while it was physically present in New York, Section 302(a)(2) does not confer personal jurisdiction over defendant in this action.

Section 302(a)(3) permits courts to exercise personal jurisdiction where: (1) a non-domiciliary defendant committed a tortious act outside of New York; (2) the cause of action arises from that tortious act; (3) the tortious act caused injury to a person or property within New York; (4) the defendant expected, or should have reasonably expected, the tortious act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or

---

[1] Section 302(a)(4), pertaining to a defendant's ownership, use or possession of real property within New York, is clearly not applicable to this matter.

international commerce. <u>Sole Resort</u>, 450 F.3d at 106; <u>see also</u> <u>LaMarca v. Pak-Mor</u>

<u>Manufacturing Co.</u>, 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 (N.Y. 2000). The

latter requirement "is intended to exclude non-domiciliaries whose business operations are of a

local character." <u>Bensusan Restaurant</u>, 126 F.3d at 29; <u>see also</u> <u>LaMarca</u>, 95 N.Y.2d at 215, 713

N.Y.S.2d 304. Since, *inter alia*, plaintiff's allegations are insufficient to establish that defendant,

a local publisher that distributed its newspapers in the State of Hawaii only, derived substantial

revenues from interstate commerce, Section 302(a)(3) does not confer personal jurisdiction over

defendant in this action.[2]


## B. Venue

Even assuming, *inter alia*, that this Court has personal jurisdiction over defendant, venue

is not proper in this Court.


### 1. The Forum Selection Clause

The March 25, 2003 Contracts contain a forum selection clause pursuant to which the

parties thereto, Kabushiki Gaisha and defendant, designated the Tokyo District Court as the

"court having jurisdiction over any litigation arising out of th[e] Contract[s]." (Compl., Ex. B).

"The enforcement of a forum selection clause through a Rule 12(b) motion to dismiss is a

well-established practice * * * in this Circuit * * *." <u>TradeComet.com LLC v. Google, Inc.</u>, 647

F.3d 472, 475 (2d Cir. 2011). Forum selection clauses are to be analyzed by applying the

---

[2] Since there is no personal jurisdiction over defendant under New York law, it is not necessary to consider whether the exercise of jurisdiction comports with due process.

standards set forth by the Supreme Court in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). See Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007). Under Bremen, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10, 92 S. Ct. 1907; see TradeComet.com, 647 F.3d at 475; Yakin v. Tyler Hill Corp., 566 F.3d 72, 76 (2d Cir. 2009).

"Determining whether to dismiss a claim based on a forum selection clause involves a four-part analysis." Phillips, 494 F.3d at 383; see also Global Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 224 (2d Cir. 2011). "The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement." Phillips, 494 F.3d at 383; see also Global Seafood, 659 F.3d at 224. "The second step requires [courts] to classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so." Phillips, 494 F.3d at 383 (emphasis in original); see also Global Seafood, 659 F.3d at 224. "A so-called permissive forum clause only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate." Phillips, 494 F.3d at 386; see also Global Seafood, 659 F.3d at 225. "Alternatively, contracting parties may intend to agree in advance on a forum where any and all of their disputes must be brought to eliminate surprise of having to litigate in a hostile forum." Phillips, 494 F.3d at 386; see also Global Seafood, 659 F.3d at 225 ("Mandatory forum selection clauses * * * require that disputes *must* be brought in the designated forum, to the exclusion of all other fora where jurisdiction may also lie." (emphasis in original)). "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated

20

forum or incorporates obligatory venue language." Phillips, 494 F.3d at 386; see also Global Seafood, 659 F.3d at 225. "A mandatory forum clause is entitled to the Bremen presumption of enforceability." Phillips, 494 F.3d at 386.

Plaintiff does not dispute that the first two (2) steps of the Bremen inquiry are met in this case, i.e., that Makino, as principal of plaintiff, was aware of the forum selection clause in the March 25, 2003 Contracts and that the forum selection clause is mandatory. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint or, in the Alternative, to Transfer Venue ["Plf. Mem."], at 7).

The third inquiry "asks whether the claims and parties involved in the suit are subject to the forum selection clause." Phillips, 494 F.3d at 383; see also Global Seafood, 659 F.3d at 224. "Plaintiff's choice of forum in bringing [its] suit in federal court in New York will not be disregarded unless the contract [containing the forum selection clause] evinces agreement by the parties [thereto] that [the] claims cannot be heard there." Phillips, 494 F.3d at 387; see also Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A., 572 F.3d 86, 90 (2d Cir. 2009). "[W]hen ascertaining the applicability of a contractual provision to particular claims, [courts] examine the substance of those claims, shorn of their labels." Phillips, 494 F.3d at 388; see also Altvater Gessler, 572 F.3d at 90 ("The court must examine the substance of a plaintiff's claims as they relate to the precise language of the specific clause at issue.")

If the first three (3) inquiries are met, i.e., the forum selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the action, the clause is "presumptively enforceable," Phillips, 494 F.3d at 383; see also Global Seafood, 659 F.3d at 224, and "the burden shifts to the party resisting enforcement to rebut the

21

presumption of enforceability by 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Altvater Gessler, 572 F.3d at 89 (quoting Phillips, 494 F.3d at 383-84 (quotations and citation omitted)); see also Global Seafood, 659 F.3d at 224.

The claims and parties involved in this action are not subject to the forum selection clause in the March 25, 2003 Contracts. To begin with, plaintiff was not a party to the March 25, 2003 Contracts. Although "non-signatory status is not dispositive of the question of applicability of a forum clause to a plaintiff's claims," Phillips, 494 F.3d at 391; see also Aguas Lenders Recovery Group v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009) ("[T]he fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause"), plaintiff's Lanham Act claims also do not "aris[e] out of th[e] [March 25, 2003] Contract[s]" between Kabushiki Gaisha and defendant. "To 'arise out of' means 'to originate from a specified source' * * *, and generally indicates a causal connection." Phillips, 494 F.3d at 389 (quoting Webster's Third New International Dictionary 117 (1981)). "[T]he words 'arise out of' [do not] encompass[] all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract." Id. To decide whether plaintiff's Lanham Act claims arise out of the March 25, 2003 Contracts, it must be determined if plaintiff's rights, predicated upon the valid ownership of the "Nikkan Sun" and "Japanese Daily Sun" trademarks, originate from the Contracts. See, e.g. id. at 390. Clearly, they do not since, *inter alia*, plaintiff does not rely upon the March 25, 2003 Contracts to establish its ownership of the relevant trademarks. Rather, plaintiff bases its ownership rights to the relevant trademarks upon its registration of the marks on November 2,

22

2010 and/or continued use of the marks since on or before 2003. In other words, plaintiff's claims do not arise out of the March 25, 2003 Contracts because it has asserted no rights or duties under those Contracts. See, e.g. id. at 391; Altvater Gessler, 572 F.3d at 91 (finding that the plaintiff's claims, *inter alia*, of trademark dilution and trademark infringement did not "sound in contract and [were] not based on rights originating from the [parties'] licensing agreement" and, thus, were not subject to a forum selection clause in the licensing agreement). Accordingly, the branch of defendant's motion seeking dismissal of the complaint pursuant to Rule 12(b)(3) based upon the forum selection clause in the March 25, 2003 Contracts is denied.

### 2. The Civil Venue Statute

The civil venue statute, 28 U.S.C. § 1391(b), provides, in relevant part, as follows:

> "A civil action may be brought in– (1) a judicial district in which any defendant resides, * * *; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

"[T]he civil venue statute permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts * * *." Gulf Ins., 417 F.3d at 356; see also Daniel v. American Board of Emergency Medicine, 428 F.3d 408, 432 (2d Cir. 2005). However, the venue statute is to be construed "strictly," i.e., "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." Gulf Ins., 417 F.3d at 357; see also Daniel, 428 F.3d at 432.

Subsections (b)(1) and (b)(3), respectively, of the civil venue statute do not confer venue in this Court because: (a) the sole defendant in this action is a Hawaii corporation with its principal place of business in Hawaii; and (b) there is at least one (1) judicial district in which this action could properly be commenced, i.e., a district in the State of Hawaii where defendant resides.

Venue is also not proper under subsection (b)(2) of the statute because none of the events or omissions relevant to plaintiff's Lanham Act claims occurred in New York. Since defendant only prints, publishes and distributes its newspaper in Hawaii, its continued use of the name "Nikkan San" since 2009, which is the basis of all of plaintiff's claims, can only have occurred in that state. Plaintiff identifies no act by defendant which occurred in New York that bears any relevance to its Lanham Act claims. Rather, plaintiff points to acts and omissions of Kobayashi, who is not a named defendant in this action, in New York to support its choice of venue. Kobayashi's personal investment of money into the New York joint venture formed by him and Makino, the formation of the New York joint venture by Kobayashi and Makino, the intent of Kobayashi and Makino in forming the New York joint venture and the cause of the collapse of Kobayashi's and Makino's relationship, although of arguable importance to the factual background of this case, are ultimately of no relevance to plaintiff's claims under the Lanham Act, as amended by the FTDA. See generally 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (holding that the elements of a trademark infringement claim under the Lanham Act are: (1) that the plaintiff holds a valid mark entitled to protection; (2) that the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services (5) without the plaintiff's consent; and (6) that the defendant's use of a similar mark

24

is likely to cause consumer confusion); see also Christian Louboutin S.A. v. Yves Saint Laurent America Holdings Inc., 696 F.3d 206, 216-17 (2d Cir. 2012) (holding that the elements of a trademark infringement claim under the Lanham Act are (1) that the plaintiff holds a valid mark entitled to protection; and (2) that the defendant's use of a similar mark is likely to cause consumer confusion); Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 118 (2d Cir. 2006) (holding that the elements of a claim for trademark dilution under the Lanham Act, as amended by the FTDA, are: (1) that the plaintiff's trademark is famous; (2) that the defendant is making commercial use of the mark in commerce; and (3) that the defendant's use of the mark began after the mark became famous and (4) dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services); Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115 (2d Cir. 2001) (holding that in order to establish a claim for false designation of origin under the Lanham Act, a plaintiff must prove: (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between the plaintiff's good and the defendant's good).

Moreover, plaintiff's contentions that "all of the contacts with Hawaii are from Defendant, in that this is its resident state" and that "Plaintiff has only minimal contacts with Hawaii," (Plf. Mem., at 10), ignore the civil venue statute which expressly provides that venue is proper where the defendant resides and makes no reference to a plaintiff's contacts with the forum for venue purposes.

In addition, plaintiff's contention that "Defendant is an affiliate of Kobayashi and, by extension, of the defunct [New York joint venture]," as the term "affiliate" is defined in the case Waldman ex rel. Elliott Waldman Pension Trust v. Riedinger, 423 F.3d 145 (2d Cir. 2005), (Plf.

Mem. at 10), is without merit because that case involved the definition of "affiliate" in the Securities Act of 1933 and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*, and 77a, *et seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 240.13e-3(a)(1), 230.404, 230.405, all of which are clearly inapplicable to this case.

Furthermore, the fact that defendant's counsel, in a letter to Makino dated August 26, 2009, referred to a potential claim defendant may have against Makino for breach of his purported promise to invest money into the New York joint venture does not render New York a proper forum of this action since, *inter alia*, no such claim has been raised in this case.

Finally, the fact that defendant's website is accessible "by individuals in the United States, including the State of New York," (Plf. Mem., at 11), is insufficient to establish venue (or personal jurisdiction) in New York. See, e.g. Hsin Ten Enterprise USA, Inc. v. Clark Enterprises, 138 F.Supp.2d 449, 460-61 (S.D.N.Y. 2000) ("[T]he creation of a website– which by its nature can be viewed anywhere– should not permit suit in every judicial district in the United States. * * * [Venue is not proper] based solely on the allegation that the defendant maintains a passive, albeit infringing, website. * * * The mere fact that a person can gain information on the allegedly infringing product by viewing a passive website is not the equivalent of a person advertising, promoting, selling or otherwise making an effort to target its product in New York."); also Skrodzki v. Marcello, 810 F. Supp. 2d 501, 516 (E.D.N.Y. 2011); Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 466-67 (S.D.N.Y. 2008); Hollins v. U.S. Tennis Association, 469 F. Supp. 2d 67, 74-5 (E.D.N.Y. 2006). Accordingly, even assuming, *arguendo*, that this Court has personal jurisdiction over defendant, venue in this Court is improper.

C.     28 U.S.C. § 1406(a)

28 U.S.C. § 1406(a) provides, in pertinent part, as follows:

> "The district court of a district in which is filed a case laying venue in the wrong *
> * * district shall dismiss, or if it be in the interest of justice, transfer such case to
> any district * * * in which it could have been brought."

"A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent

action in an appropriate forum," Arrowsmith v. United Press Intern., 320 F.2d 219, 221 (2d Cir.

1963), and, thus, is without prejudice.

Where venue was laid in the "wrong division or district" because the plaintiff cannot

obtain personal jurisdiction over a defendant, see Corke v. Sameiet M.S. Song of Norway, 572

F.2d 77, 79 (2d Cir. 1978), the Court may transfer the action in the interest of justice. id. at 80;

see also Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962);

Fort Knox Music, Inc. v. Baptiste, 257 F.3d 108, 122 (2d Cir. 2001) (holding that a court has the

"power to transfer venue even if it lacks personal jurisdiction over the defendants.") Where a

defendant only seeks dismissal of the action, "the court may properly, sua sponte, order it

transferred" pursuant to Section 1406(a). McCulley v. Anglers Cove Condominium Association,

Inc., 977 F. Supp. 177, 181 (E.D.N.Y. 1997) (quoting Concession Consultants, Inc. v. Mirisch,

355 F.2d 369, 371-72 n. 3 (2d Cir. 1966)).

"Courts enjoy considerable discretion in deciding whether to transfer a case in the interest

of justice." Daniel, 428 F.3d at 435. A "compelling reason" for transfer, in lieu of dismissal,

exists where the plaintiff would be prevented from re-filing the action in the proper forum

because it is time-barred. Id. Nonetheless, dismissal, rather than transfer, is warranted where the

case "is a sure loser," so as not to "waste the time of another court." Id. at 436; see also

Gonzalez v. Hasty, 651 F.3d 318, 324 (2d Cir. 2011). In addition, a transfer is not in the interest of justice where it "would reward plaintiffs for their lack of diligence in choosing a proper forum." Spar, Inc. v. Information Resources, Inc., 956 F.2d 392, 394 (2d Cir. 1992); see also Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 172-73 (S.D.N.Y. 2009) ("[D]ismissal is appropriate * * * when the case unquestionably lacks merit, * * * was brought with knowledge that venue was improper, or would otherwise reward plaintiffs for their lack of diligence in choosing a proper forum." (quotations and citations omitted)); World Skating Federation v. International Skating Union, 357 F. Supp. 2d 661, 667 (S.D.N.Y. 2005) ("Section 1406 should not be a panacea for lawyers who bring suits in jurisdictions where they know or should know that they do not belong.") Thus, whether a transfer is in the interest of justice under Section 1406 "depends upon whether the plaintiff has been diligent in pursuing his claim, whether the opposing party would be unduly prejudiced by the transfer, and whether plaintiff's reason for bringing the case in the wrong forum is analogous to an 'erroneous guess' about an 'elusive fact' which prevents the 'expeditious and orderly adjudication' of the case on the merits." Gibbons v. Fronton, 661 F. Supp. 2d 429, 436 (S.D.N.Y. 2009) (quoting Goldlawr, 369 U.S. at 466, 82 S. Ct. 913).

For the reasons set forth above, this action cannot proceed here both because this Court lacks personal jurisdiction over defendant and because this Court is an improper venue. Thus, pursuant to Section 1406(a), this action must either be dismissed without prejudice or transferred to another district where it could have been brought initially in the interest of justice. Since, *inter alia*, the applicable statute of limitations has not expired, see, Section 480-2 of the Hawaii Revised Statutes ("Any action to enforce a cause of action arising under this chapter [including

claims for unfair methods of competition in violation of H.R.S. § 480-2] shall be barred unless commenced within four years after the cause of action accrues * * *."); Star Markets, Ltd. v. Texaco, Inc., 945 F. Supp. 1344, 1348 (D. Hawaii, 1996) (holding that a plaintiff may assert a trademark infringement claim as an unfair methods of competition claim under Section 480-2 of the Hawaii Revised Statutes); see generally Gerena v. Korb, 617 F.3d 197, 204 (2d Cir. 2010) (holding that where a case is transferred under Section 1406 due to improper venue or want of jurisdiction, the law of the transferee court applies); Schaeffer v. Village of Ossining, 58 F.3d 48, 50 (2d Cir. 1995) (accord), and plaintiff should have known that New York was not a proper forum within which to bring an action against a Hawaii corporation which prints, publishes and distributes a newspaper only in Hawaii, I find that it is not in the interests of justice to transfer this action to a proper district court. Accordingly, the branches of defendant's motion seeking dismissal of the complaint pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) are granted and the complaint is dismissed without prejudice for lack of personal jurisdiction and improper venue.[3]

III. ' Conclusion

For the reasons stated herein, the branches of defendant's motion seeking dismissal of the complaint pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure and 28

---

[3] In light of this determination, the branch of defendant's motion seeking to transfer this action on the grounds of *forum non conveniens* pursuant to 28 U.S.C. § 1404(a) is denied as moot.

U.S.C. § 1406(a) are granted to the extent set forth herein, the complaint is dismissed without prejudice for lack of personal jurisdiction and improper venue, and defendant's motion is otherwise denied. The Clerk of the Court is directed to close this case.

SO ORDERED.

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: January 2, 2013
      Central Islip, N.Y.